WILKINS *v.* HUKILL.

1. WILLS—AGREEMENT BETWEEN LEGATEES.

    Special legatees may agree to any division of the legacies bequeathed to them that they see fit, and no heir or residuary legatee can complain.

2. SAME—CONTEST—SETTLEMENT—PROBATE—CONCLUSIVENESS.

    Concessions by a legatee in order to obtain the probate of a will which other legatees are contesting on the grounds of incompetency and undue influence do not establish that the attack is in either respect well grounded, but, on the contrary, the probate of the will settles in the negative the question of the existence of the grounds on which it was attacked.

3. SAME—INTERPRETATION OF TERMS—HEIRS.

    In an agreement between legatees whereby concessions are made in order to secure the probate of the will, the word "heirs" will be held to be a word of description merely, referring to none outside of the parties to the instrument, where it is clear that such was the intention of the parties.

Appeal from Wayne; Frazer, J. Submitted November 3, 1897. Decided January 25, 1898.

Bill by James H. Wilkins against Kate W. Hukill, Mary B. W. Ogden, Lizzie J. Wilkins, Albert Wilkins, Fannie W. Hukill, and John Atkinson, administrator, to reform a judgment. From a decree for complainant, defendants appeal. Reversed.

The following statement of the case is taken, mainly, from the brief of the administrator:

John Atkinson is the administrator of the estate of Mary W. Beecher, deceased. Mrs. Beecher died in 1893, leaving a last will and testament, by which she gave to the persons named in the following table the amounts set opposite their names:

Her sister Mrs. Kate H. Rice ----------------------- $125,000
Her sister Mrs. Wheaton ------------------------- 125,000
Her nephew Charles W. Rice ---------------------- 125,000
Her nephews and nieces the children of David
    Wilkins, a deceased brother------------------------ 14,000
Her nephew and nieces the children of James
    Wilkins, a deceased brother---------------------- 14,000
Her niece Victoria Robinson, the daughter of a de-
    ceased sister ---------------------------------- 5,000
Her brother, Alvin Wilkins, and his wife and
    children --------------------------------------- 20,000
John Wilkins, a grandson of a deceased brother--- 5,000
The mother-in-law and the wife of Charles W.
    Rice ------------------------------------------- 8,000
                                                      ———————

      Total ----------------------------------- $441,000

She gave the residue of her estate to Charles W. Rice. and Mrs. Rice and Mrs. Wheaton, in trust for such benevolent, charitable, and philanthropic purposes as they should deem most in accord with her wishes. Her nephew Charles W. Rice was made the sole executor.

Mrs. Beecher left no lineal descendants. Her heirs at law are her sisters, Mrs. Rice and Mrs. Wheaton; her brother, Alvin Wilkins; the seven children of a deceased brother, David Wilkins, who reside in Chicago, and to whom she left a legacy of $2,000 each; the children of her deceased brother James Wilkins, six in number, and of whom the complainant is one, and the defendants, other than the administrator, are the others; and Victoria Robinson, daughter of a deceased sister. By her will she left the defendant Kate W. Hukill $10,000; and to Mrs. Ogden, Lizzie J. Wilkins, Albert Wilkins, and Fannie W. Hukill, $1,000 each; and nothing to the complainant. The legatees Charles W. Rice, the wife and children of Alvin Wilkins, John Wilkins, a grandson of a deceased brother, and the mother-in-law and the wife of Charles W. Rice, were not heirs at law.

The will was admitted to probate in the probate court. An appeal to the circuit was taken by all the heirs, except Mrs. Kate H. Rice and the complainant. While the appeal was pending, the proponent, Mr. Charles W. Rice, the executor named, and Mrs. Kate H. Rice, who was represented by counsel, and all the contestants,

arrived at a settlement, and entered into the written agreement set out in the bill. By this agreement, Charles W. Rice waived $85,000 of his legacy; Victoria Robinson waived the $5,000 given to her; the residuary clause was set aside as void; Charles W. Rice retired from the executorship; Mrs. Wheaton and Mrs. Rice waived any right to the residue, up to $575,000. With these exceptions, the will was probated, and the defendant Atkinson was appointed administrator. In making the agreement, the parties estimated the entire estate at $575,000. The amounts waived by the four legatees above named were by the agreement to be divided into four parts, giving one to the family of David Wilkins, one to the family of James Wilkins, one to Victoria Robinson, and one to Alvin Wilkins. Each part amounted to $56,000. To this sum the bequests given to each family were added, so that by the arrangement the family of David Wilkins are to get $70,000; Victoria Robinson, who waived her bequest, $56,000; the family of James Wilkins, $70,000; and Alvin Wilkins, and his wife 'and' children, $76,000. Mrs. Rice and Mrs. Wheaton are given each the lump sum of $125,000. In case the estate exceeded the sum of $575,000, the excess is to be divided equally among the six families represented.

Before this agreement had been signed, the defendants Kate W. Hukill, Mary B. W. Ogden, Lizzie J. Wilkins, Albert Wilkins, and Fannie W. Hukill entered into an agreement for the division of the $70,000, in which they provided that the complainant should have nothing out of the estate until after $441,000 (the sum of all the original bequests) had been distributed, and that after that he should share equally with his brother and sisters. The first clause of this agreement reads as follows:

"Our brother, James Wilkins, is not one of the contestants, but, under the statutes of distribution in the State of Michigan, is entitled to 1-36 of the residue of the estate of Mary W. Beecher, to wit, all of said estate above the $441,000 of bequests contained in said will. He is not,

however, entitled to share in the main part of said estate, because that portion of the main estate which comes to us under the annexed agreement belongs to us, being given by the legatees named in said will under an agreement for the discontinuing of said appeal; and he, therefore, is not entitled to any part of the same, but simply 1-36 of the residue."

It then provided for a distribution among the five, who were parties to it, of the amount coming to them. This agreement was attached to the original one, and made a part of it, and a judgment entered in accordance with the terms of both. The bill is filed to reform the judgment in so far as it adopts the second agreement for a division of the $70,000 given to the heirs of James Wilkins. The complainant, who joined in neither of the agreements, affirms the first one, but claims that the second one, made by his brother and sisters, excluding him from participation in the distribution until after the $441,000 shall have been distributed, is a fraud upon him, and that, as to the division of the $70,000 given to the heirs of James Wilkins, the judgment should be modified. The case was heard upon pleadings and proofs, and decree entered for the complainant, giving him one-sixth of the entire amount that went to the heirs of James Wilkins under the agreement.

*St. John & Merriam* and *Geer & Williams,* for complainant.

*Henry A. Haigh,* for defendant Kate W. Hukill.

*John Atkinson, in pro. per.*

*William S. Sheeran,* for the other defendants.

GRANT, C. J. (*after stating the facts*). The learned circuit judge filed a written opinion, in which he held, substantially, that the legatees must divide the estate as heirs at law or under the will; that neither contract, assuming that there were two, is valid; that complainant ratified the first one, and thereby made it valid; held the so-called

second agreement invalid; and rendered a decree for $11,668 for complainant

By the terms of the will, complainant would receive nothing. The entire estate was disposed of. It was at once agreed by all that the residuary clause was void for indefiniteness. This made the residuum of the property intestate, and descendible to the heirs at law. It is and was conceded that complainant was entitled to his share in the intestate portion of the estate. The will was duly probated. It has never been annulled or set aside. The agreement and judgment rendered in pursuance of it recognize the competency of the testatrix and the validity of the will. It is changed only in one or two particulars, and confirmed in all the rest. It was entirely competent for the legatees to agree to any division of special legacies bequeathed to them as they saw fit, and no heir or residuary legatee could complain.

Some of these legatees appeared to believe that undue influence was exercised by the Rices, who were to benefit more largely by the will than were the others. The proceedings in the probate court are not before us, and the only information we have is from one of the witnesses, who testified that the will was attacked for incompetency and undue influence. These are the usual grounds for attacking such instruments. Claim is sometimes made where there is no foundation, for the purpose of effecting a compromise. Whatever the facts are in this case, we do not know, and it is not material that we should. The result establishes the fact that she was competent, and that there was no undue influence. Concessions by legatees do not establish either incompetency or undue influence. It was claimed that Charles Rice was indebted to the estate to the amount of $40,000, borrowed from Mrs. Beecher in her lifetime. The main concessions came from him. In fact, he was the only one to abandon any part of a bequest. A long and expensive litigation seemed in prospect. It was wise to compromise.

It was not intended that the amount which Charles Rice

conceded to the others should become intestate property. Aside from the so-called "second agreement," it is evident that these legatees were compromising the legacies made to them. Complainant is not thereby defrauded, unless the will is set aside. His sister Mrs. Hukill was the only one who knew his whereabouts. She did not choose to inform him of the death of Mrs. Beecher, or the provisions of her will. He ascertained the situation, however, in time to interpose a contest. By the act of all the legatees in conceding the invalidity of the residuary clause, complainant was benefited to the extent of nearly $4,000. When he ascertained the situation, two courses were open to him,— either to contest the will, or accept the provisions of the settlement made between the legatees. He chose the latter. He is therefore bound by the entire agreement, not by one part of it. In ratifying it, he confirmed the will, just as the agreement did. It is conclusively established that the children of James Wilkins, who were made legatees by the will, would not execute the agreement, which was made in Chicago, and signed by some of the other legatees at the time, until an arrangement was made among themselves, to be attached to and made a part of that agreement. They were legatees compromising with legatees. Their attorneys, Gray & Gray and Mr. Charles M. Swift, advised them that they could divide among themselves, as they chose, what belonged to them under the will, but that the residuary estate was intestate property, and would go to the heirs at law. They had no intention, or thought, even, of abandoning their legacies, and making the entire property intestate. Mrs. Hukill was a legatee to the extent of $10,000; the others, $1,000 each. They gained by the voluntary surrender of Mr. Rice. This surrender was not made to the heirs, but to the legatees. Complainant was entitled to no voice in that settlement, except as an actual or threatened contestant of the will. He was not a contestant, and has never placed himself in that attitude. In ratifying that agreement he ratified the probate of the will, and the

agreement, *in toto*, made by the other legatees. The instrument was not delivered, and therefore not executed, until the written arrangement entered into by complainant's brother and sisters was attached to and made a part of it.

Complainant's counsel place great reliance upon the fact that the agreement used the word "heirs," and described the parties to it as "the heirs of David Wilkins, the heirs of James Wilkins, Alvin Wilkins, his heirs and assigns." These are words of description, merely, and refer to none outside the instrument. They were not used, or intended to be used, as conveying rights to these parties as heirs at law. It was a convenient expression by which to describe the different parties to the will and agreement, who were also heirs at law of the parties named. In the same way the attorneys adopted the expression, when speaking of the different parties, "Chicago heirs" and "Pittsburg heirs;" those being the cities where several of them lived.

We conclude that the settlement covered only testate property, that it concerned only the legatees, and that, under the agreement, complainant obtained an interest only in the residuum of the estate.

The decree must be reversed, and bill dismissed. The defendants will recover costs of both courts.

The other Justices concurred.